Index No. 26-CV-1418 (JPC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAL ESTATE BOARD OF NEW YORK, ROYAL REALTY CORP. D/B/A THE DURST ORGANIZATION, and EXTELL DEVELOPMENT,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS

***STEVEN BANKS***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel:  Aimee K. Lulich*
*Tel:  (212) 356- 2369*
*Matter No.  2026-016649*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................II

STATEMENT OF FACTS ................................................................................................... 2

STANDARD OF REVIEW ................................................................................................. 4

ARGUMENT

       POINT I

           PLAINTIFFS' CLAIM OF PREEMPTION UNDER
           THE NLRA FAILS..................................................................................5

       POINT II

           THE COURT SHOULD DECLINE TO EXERCISE
           SUPPLEMENTAL JURISDICTION OVER THE
           REMAINING CLAIMS............................................................................10

CONCLUSION............................................................................................................. 14

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*520 S. Mich. Ave. Assocs., Ltd. v. Shannon,*
   549 F.3d 1119 (7th Cir. 2008) ......................................................................................9

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)................................................................................................4, 5

*Associated Builders & Contractors of S. Cal. v. Nunn,*
   356 F.3d 979 (9th Cir. 2004) ......................................................................................9

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)....................................................................................................4

*Boreali v. Axelrod,*
   71 N.Y.2d 1 (1987) ..................................................................................................13

*Carnegie-Mellon Univ. v. Cohill,*
   484 U.S. 343 (1988)..................................................................................................11

*Chamber of Commerce of the United States v. Bragdon,*
   64 F.3d 497 (9th Cir. 1995) ........................................................................................9

*Concerned Home Care Providers, Inc. v. Cuomo,*
   783 F.3d 77 (2d Cir. 2015)................................................................................6, 7, 9

*De Canas v. Bica,*
   424 U.S. 351 (1976)....................................................................................................7

*Faber v. Metro. Life Ins. Co.,*
   648 F.3d 98 (2d Cir. 2011)......................................................................................4, 9

*Fort Halifax Packing Co. v. Coyne,*
   482 U.S. 1 (1987)........................................................................................................8

*Giordano v. City of N.Y.,*
   274 F.3d 740 (2d Cir. 2001)......................................................................................13

*Glen Oaks Village Owners, Inc. v. City of N.Y.,*
   44 N.Y.3d 468 (2025)................................................................................................12

*Golden State Trans. Corp. v. City of Los Angeles,*
   475 U.S. 608 (1986)....................................................................................................7

*Hubbuch v. Cap. One,*
   25-CV-0406 (VSB), 2026 U.S. Dist. LEXIS 53116
   (S.D.N.Y. Feb. 10, 2026)............................................................................................5

**Cases**                                                                                                **Pages**

*Independent Ins. Agents & Brokers of N.Y. v. N.Y.S. Dept. of Fin. Servs.*,
39 N.Y.3d 56 (2022) ...............................................................................................13

*Int'l Assoc. of Machinists v. Wis. Employment Relations Comm'n*,
427 U.S. 132 (1976)...............................................................................5, 6, 7, 8, 9

*Itar-Tass Russian News Agency v. Russian Kurier*,
140 F.3d 442 (2d Cir. 1998)...................................................................................10

*Kleinman v. Elan Corp.*,
716 F.3d 145 (2d Cir. 2013)......................................................................................5

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
6 F.4th 293 (2d Cir. 2021) ........................................................................................4

*Lynch v. City of New York*,
952 F.3d 67 (2d Cir. 2020).........................................................................................4

*Malone v. White Motor Corp.*,
435 U.S. 497 (1978).....................................................................................................8

*Metro Found. Contrs., Inc. v. Arch Ins. Co.*,
498 F. App'x 98 (2d Cir. 2012) ..............................................................................10

*Metro. Life Ins. Co. v. Massachusetts*,
471 U.S. 724 (1985)...................................................................................6, 7, 8, 9

*Motorola Credit Corp. v. Uzan*,
388 F.3d 39 (2d Cir. 2004).......................................................................................11

*N.Y. State Club Ass'n v. City of New York*,
69 N.Y.2d 211 (1987) ...............................................................................................12

*People v. Torres*,
37 N.Y.3d 256 (2021) ...............................................................................................12

*Perry v. NYSARC, Inc.*,
424 F. App'x 23 (2d Cir. 2011) ................................................................................5

*Poindexter v. EMI Record Group, Inc.*,
11-CV-0559 (LTS), 2012 U.S. Dist. LEXIS 42174
(S.D.N.Y. Mar. 27, 2012) ...........................................................................................5

*R.I. Hospitality Ass'n v. City of Providence*,
667 F.3d 17 (1st Cir. 2011)........................................................................................8

**Cases** | **Pages**

*Rest. Law Ctr. v. City of N.Y.*,
  17-CV-9128 (PGG), 360 F. Supp. 3d 192
  (S.D.N.Y. Feb. 6, 2019) ................................................................................... 10-11

*Rest. Law Ctr. v. City of N.Y.*,
  21-CV-4901 (DLC), 585 F. Supp. 3d 366
  (S.D.N.Y. Feb. 10, 2022),
  *aff'd on other grounds*,
  90 F.4th 101 (2d Cir. 2024) ........................................................................9

*Rondout Elec., Inc. v. N.Y. State Dep't of Labor*,
  335 F.3d 162 (2d Cir. 2003).....................................................................7, 9

*S. New Eng. Tel. Co. v. Comcast Phone of Conn.*,
  718 F.3d 53 (2d Cir. 2013).........................................................................11

*Seabrook v. Jacobson*,
  153 F.3d 70 (2d Cir. 1998)......................................................................11, 13

*Selevan v. N.Y. Thruway Auth.*,
  584 F.3d 82 (2d Cir. 2009)...........................................................................4

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966)................................................................................11, 13

*Valencia v. Sung M. Lee*,
  316 F.3d 299 (2d Cir. 2003).............................................................10, 11, 13

*Wholesale Laundry Bd. of Trade, Inc. v. City of New York*,
  12 N.Y.2d 998 (1963) ...............................................................................12

*Williams v. Dow Chem. Co.*,
  01-CV-4307 (PKC), 326 F. Supp. 2d 443
  (S.D.N.Y. May 20, 2004)............................................................................11

**Statutes**

44 R.C.N.Y. § 2-03 ....................................................................................3

28 U.S.C. § 1367........................................................................................1

28 U.S.C. § 1367(1) ..................................................................................10

28 U.S.C. § 1367(c)(1)..........................................................................11, 14

28 U.S.C. § 1367(c)(3)........................................................................10, 11, 14

**Statutes**                                                                                          **Pages**

41 U.S.C. § 6701.................................................................................................................8

Fed. R. Civ. P. 12(b)(6)......................................................................................................4

Fed. R. Civ. P. 12(c) .......................................................................................................1, 4

Gen. Business Law § 89-f(6) ...............................................................................................2

Labor Law § 230(1) .............................................................................................................3

Labor Law § 230(8) .............................................................................................................2

Labor Law § 231 ..................................................................................................................2

Local Law 61 ...............................................................................1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 12

N.Y.C. Admin. Code § 6-109 ..............................................................................................2

N.Y.C. Admin. Code § 6-109.1 ...........................................................................................8

N.Y.C. Admin. Code § 6-130 ..............................................................................................8

N.Y.C. Admin. Code § 10-172 ............................................................................................8

N.Y.C. Admin. Code § 20-1601 .......................................................................................2, 3

N.Y.C. Admin. Code § 20-1602 ..........................................................................................3

N.Y.C. Admin. Code § 20-1603 ..........................................................................................3

N.Y.C. Admin. Code § 20-1604 ..........................................................................................3

N.Y.C. Admin. Code § 20-1607 ..........................................................................................3

N.Y.C. Admin. Code § 20-1610 ..........................................................................................4

N.Y.C. Admin. Code § 20-1613 ..........................................................................................4

N.Y.C. Admin. Code § 20-1614 ..........................................................................................4

N.Y.C. Admin. Code § 20-1615 ..........................................................................................4

N.Y.C. Admin. Code § 20-1616 .......................................................................................4, 8

National Labor Relations Act § 7 ........................................................................................6

National Labor Relations Act § 8 ........................................................................................6

**Statutes**                                                                        **Pages**

Public Service Law § 42-A ...........................................................................................8

R.P.T.L. § 421-a...........................................................................................................8

R.P.T.L. § 467-a...........................................................................................................8

R.P.T.L. § 467-m .........................................................................................................8

R.P.T.L. § 485-x ..........................................................................................................8

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------------- x

REAL ESTATE BOARD OF NEW YORK, ROYAL
REALTY CORP. D/B/A THE DURST
ORGANIZATION, and EXTELL DEVELOPMENT,

Plaintiffs,

26-CV-1418 (JPC)

- against -

THE CITY OF NEW YORK,

Defendant.

------------------------------------------------------------------------------- x

Defendant City of New York ("City"), by its attorney, Steven Banks, Corporation Counsel of the City of New York, respectfully submits this memorandum of law in support of its motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1367.

Plaintiffs challenge New York City Local Law 61 of 2026 ("LL 61") which was enacted by New York City Council ("City Council") to establish minimum wages and benefits for private security guards in the City in order to advance the safety and security of locations and citizens within the City. Plaintiffs bring one federal claim, in which they assert that the National Labor Relations Act ("NLRA") preempts the local law. However, plaintiffs have failed to state a claim under the NLRA because LL 61 simply sets minimum wage and benefit requirements and does not intrude upon the negotiation process or tactics available to either party during labor negotiations. The two out-of-Circuit cases upon which plaintiffs principally rely have not been adopted by the Second Circuit, and, in fact, have been rejected on material points by both the Second Circuit and the very Circuit from which one of the cases originated. Because plaintiffs fail to state a claim of preemption under the NLRA, their only federal claim must be dismissed.

Further, plaintiffs' two remaining claims are both brought pursuant to New York State law, and raise novel and complex issues of state law. The principles of comity, federalism, and judicial economy weigh against this Court retaining supplemental jurisdiction over the two state law claims. Thus, this Court should decline to retain jurisdiction over Counts Two and Three and should dismiss those claims without prejudice to be re-filed in state court.

## STATEMENT OF FACTS

On January 29, 2026, the City Council enacted LL 61, which added Chapter 16 to Title 20 of the Administrative Code of the City of New York ("Admin. Code"), to establish minimum compensation standards for covered security guards employed in the City. LL 61, Lulich Decl., Ex. A. Specifically, LL 61 will require covered security guard employers to provide to covered security guards at least the prevailing wages and benefits set annually by the New York City Comptroller's Office (the "Comptroller").

Under LL 61, a "covered security guard" is a person who meets the definition of "security guard" as set forth in New York General Business Law ("Gen. Bus. Law") § 89-f (6) and is required to have a current registration card to perform security guard functions pursuant to Gen. Bus. Law Article 7-A. *See* Admin. Code § 20-1601. A "covered security guard employer" is "any person who employs one or more covered security guards" in the City, other than the United States, New York State, the Port Authority of New York and New Jersey, or the City. *Id.*

State and City laws mandate that building service employees on public contracts must receive at minimum the prevailing wage and supplements set annually by a municipality's fiscal officer. New York Labor Law ("Labor Law") § 231; Admin. Code § 6-109. The Comptroller is the City's fiscal officer and is tasked with determining the prevailing wage and supplements in the City. Labor Law § 230(8); Admin. Code § 6-109. The process by which the Comptroller's Office determines the prevailing wage and benefit supplements annually is set forth

2

in Rules of the City of New York ("RCNY"), Title 44, § 2-03.  As relevant here, the Building Service Employee Schedule contains the prevailing wage schedule for security guards.  Labor Law § 230(1).

Beginning January 1, 2027, a covered security guard employer must pay covered security guard employees a wage that meets or exceeds the prevailing wage set by the Comptroller in the Building Service Employee Schedule.  Admin. Code § 20-1602.

Beginning January 1, 2028, a covered security guard employer must provide covered security guard employees with paid time off benefits that meet or exceed the paid time off benefits set by the Comptroller in the Building Service Employee Schedule.  Admin. Code § 20-1603.

Beginning January 1, 2029, a covered security guard employer must pay covered security guard employees a supplemental benefit that meets or exceeds the supplemental benefits set by the Comptroller in the Building Services Employee Schedule. Admin. Code § 20-1604.  A "supplemental benefit" is a fringe benefit such as insurance, pensions, compensation for injury, cost of apprenticeship, or other benefits "not otherwise required by… law."  Admin. Code § 20-1601.  Supplemental benefits requirements are set by the Comptroller as an hourly rate. *See* Building Service Employee Schedule.

Further, LL 61 requires that covered security guard employers retain records documenting compliance with LL 61 for six years, and provides that the records may be accessed by the City "consistent with applicable law and in accordance with rules of the department and with appropriate notice, in furtherance of an investigation conducted pursuant to this chapter." Admin. Code § 20-1607.  The law provides for enforcement by the New York City Department of

3

Consumer and Worker Protection ("DCWP") (Admin. Code § 20-1610), the Office of the Corporation Counsel (*Id.* at § 20-1613 & § 20-1614), or private right of action (*Id.* at § 20-1615).

LL 61 does not apply to security guards employed pursuant to certain enumerated government contracts or regulations. Admin. Code § 20-1616.  Further, any provision in LL 61 does not apply to security guards subject to a collective bargaining agreement if the agreement expressly waives the provision and the collective bargaining agreement provides at least the same minimum wage, paid time off, and supplemental benefit requirements as those set for covered security guards under LL 61.  *Id.* § 20-1616.

<u>**STANDARD OF REVIEW**</u>

"The standard for granting a Rule 12(c) motion for judgement on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (*quoting Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)). Applying this standard requires courts to "draw all reasonable inferences in [the non-movant's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief.*" Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (*quoting Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)); *see generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A complaint must nevertheless "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.*

4

(citations and quotations omitted). The Supreme Court in *Iqbal* set forth a "two-pronged" approach for analyzing a motion to dismiss. *Id.* First, a court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Once the court has stripped away the conclusory allegations, it must determine whether the complaint's "well-pleaded factual allegations… plausibly give rise to an entitlement to relief." *Id.* at 678-79 ("only a complaint that states a plausible claim for relief survives a motion to dismiss.")

In addition to the allegations in the complaint, a court may consider documents attached to the complaint, documents incorporated into the complaint by reference, public records, documents of which the court may take judicial notice, and documents that the plaintiff relied upon in bringing the action. *See, e.g., Kleinman v. Elan Corp.*, 716 F.3d 145, 152 (2d Cir. 2013). "If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Hubbuch v. Cap. One*, 25-CV-0406 (VSB), 2026 U.S. Dist. LEXIS 53116, *24 (S.D.N.Y. Feb. 10, 2026) (*citing Poindexter v. EMI Record Group, Inc.*, 11-CV-0559 (LTS), 2012 U.S. Dist. LEXIS 42174, *6 (S.D.N.Y. Mar. 27, 2012)); *see also Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011).

## ARGUMENT

### POINT I

### PLAINTIFFS' CLAIM OF PREEMPTION UNDER THE NLRA FAILS

The sole federal claim in the Complaint is Count One, alleging that LL 61 is preempted by the NLRA under the doctrine of "Machinists preemption." *Int'l Assoc. of Machinists v. Wis. Employment Relations Comm'n*, 427 U.S. 132, 140 (1976) (hereinafter "*Machinists*"). This doctrine prevents the regulation of union or employer bargaining conduct that is not covered by

NLRA §§ 7 and 8. [1]  It does not prevent the type of regulation at issue here, which only "imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements, at least so long as the purpose of the state legislation is not incompatible with these general goals of the NLRA." *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. U.S. 724, 754-56 (1985).  Because LL 61 sets minimum labor standards without intruding upon a collective-bargaining process, it does not implicate the conduct regulated by the NLRA.

*Machinists* preemption prevents the regulation of union or employer bargaining conduct that is not covered by NLRA §§ 7 and 8 on the theory that Congress intended to leave such conduct "to be controlled by the free play of economic forces." *Machinists*, 427 U.S. at 140 (citation and internal quotation marks omitted).  Plaintiffs' contention that LL 61 is preempted under *Machinists* misunderstands the scope of that doctrine.  *Machinists* preemption is centrally concerned with the mechanics of the collective-bargaining process.  *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 753 (1985) [hereinafter "*Metro. Life*"] (defining the contours of *Machinists* preemption by stating that "[t]he NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargain that is struck when the parties are negotiating from relatively equal positions"); *Concerned Home Care Providers, Inc.*, 783 F.3d 77, 86 (2d Cir. 2015) ("[T]he Supreme Court has never applied *Machinists* preemption to a state law that does not regulate the mechanics of labor dispute resolution.").  The premise of the doctrine is that, in establishing a framework for self-organization and collective bargaining, Congress determined which economic

---

[1] NLRA § 7 protects employees' right to self-organization or to refrain from self-organization. NLRA § 8 prohibits employers from taking adverse actions against employees for exercising their rights under NLRA § 7 and sets forth specific actions that constitute unfair labor practices by employers under the NLRA.

weapons (*e.g.*, employer lockouts and union strikes) should be regulated, and which should be left unregulated. *Golden State Trans. Corp. v. City of Los Angeles*, 475 U.S. 608, 615 (1986); *Rondout Elec., Inc. v. N.Y. State Dep't of Labor*, 335 F.3d 162, 167 (2d Cir. 2003) ("[S]tate [or local] action is only preempted if it regulates the use of economic weapons that are recognized and protected under the NLRA . . .").

Thus, in *Machinists*, the Supreme Court held that a state could not enjoin a union from engaging in a method of self-help—*i.e.*, the refusal to work overtime—that was not prohibited under the NLRA. *Machinists*, 427 U.S. at 155. Unlike in *Machinists*, LL 61 neither interferes with the mechanics of collective bargaining nor regulates the process by which an agreement may be reached, nor does it restrict any of the economic weapons or self-help measures that would otherwise be available during the collective bargaining process. Instead, it sets minimum wage and benefits requirements for security guard employers whether or not the security guards are unionized. It has long been the rule that local laws setting baseline labor standards are "'not incompatible' with the 'general goals of the NLRA'" to protect collective bargaining. *Concerned Home Care Providers*, 783 F.3d at 85 (quoting *Metro. Life*, 471 U.S. at 755). Indeed, states "have traditionally possessed 'broad authority under their police powers to regulate the employment relationship," *id.* (quoting *De Canas v. Bica*, 424 U.S. 351, 356 (1976)), and courts cannot preempt "all local regulation that touches or concerns . . . the complex interrelationships between employees, employers, and unions…." *Metro. Life*, 471 U.S. at 757.

Plaintiffs' argument that LL 61 favors unions and imposes greater burdens on non-unionized employers is simply false. Compl. at ¶¶ 45-46. The law exempts security guard employers subject to a collective bargaining agreement *only* from the provisions of LL 61 that the agreement expressly waives and *only* if the collective bargaining agreement provides the same

minimum wage and benefit levels than those provided for under LL 61. Admin. Code § 20-1616. Thus, unionized employers subject to collective bargaining agreements are not differently situated than other employers—they are subject to any provision not expressly waived in the agreement and they have the same wage and benefit minimum requirements. *Id.* Because it "affect[s] union and nonunion employees equally" and "neither encourage[s] nor discourage[s] the collective-bargaining processes" LL 61 is a valid exercise of local law. *Metro. Life*, 471 U.S. at 755. Further, it is well-settled that *Machinists* preemption does not apply where the regulation at issue only imposes minimal substantive requirements. *Metro. Life*, 471 U.S. at 754-755; *Malone v. White Motor Corp.*, 435 U.S. 497, 504-05 (1978) ("[T]here is nothing in the NLRA . . . which expressly forecloses all state regulatory power with respect to those issues, such as pension plans, that may be the subject of collective bargaining."); *R.I. Hospitality Ass'n v. City of Providence*, 667 F.3d 17 (1st Cir. 2011) (rejecting claim that a law that gives employees benefits that they would otherwise have had to bargain for is preempted under *Machinists* (citing *Metro. Life*, 471 U.S. at 757 and *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987))).

Similarly, plaintiffs misleadingly state that LL 61 "excludes federal, state, and municipal employers from its coverage *and* exempts virtually all public-sector employees" Compl. at ¶ 48 (emphasis in original), while failing to acknowledge that the federal, state, and municipal employers are exempted because they are *already* subject to minimum wage and benefit standards and public sector employees already benefit from the prevailing wage laws and pre-existing regulations to enforce violations of these minimum requirements. *See, e.g.*, 41 U.S.C. § 6701; Labor Law Articles 8, 9, & 19-D; New York Public Service Law § 42-A; New York Real Property Tax Law §§ 421-a, 467-a, 467-m, & 485-x; Admin. Code §§ 6-109.1, 6-130, & 10-172; and Admin. Code § 20-1616.

Plaintiffs also argue that LL 61 is "not generally applicable" (and thus not a "minimum labor standard") because it "applies to only one occupation in New York City: security guards." Compl. at ¶ 48. This misinterpretation of *Metro. Life* appears to be rooted in the Ninth Circuit's decision in *Chamber of Commerce of the United States v. Bragdon*, 64 F.3d 497 (9th Cir. 1995), which was later followed by the Seventh Circuit in *520 S. Mich. Ave. Assocs., Ltd. v. Shannon*, 549 F.3d 1119 (7th Cir. 2008). However, in *Metro. Life*, the Supreme Court was clear that "minimum labor standards" were those that: (i) "affect union and nonunion employees equally"; and (ii) "neither encourage nor discourage the collective-bargaining processes." *Metro. Life*, 471 U.S. at 755. Thus, the "general applicability" language is linked to the regulation's treatment of union and non-union employees, rather than the scope of that regulation. *See id.*

In any event, the Ninth Circuit has since repudiated *Bragdon* in this regard. *See Associated Builders & Contractors of S. Cal. v. Nunn*, 356 F.3d 979, 990 (9th Cir. 2004) ("[W]e have since [*Bragdon*] explained on several occasions that the NLRA does not authorize us to preempt minimum labor standards simply because they are applicable only to particular workers in a particular industry… It is now clear in this Circuit that state substantive labor standards, including minimum wages, are not invalid simply because they apply to particular trades, professions, or job classifications rather than to the entire labor market."). More importantly, not only has the Second Circuit refused to follow *Bragdon*, but it has upheld regulations that only apply to particular industries. *See Concerned Home Care Providers, Inc.*, 783 F.3d at 86 ("*Machinists* preemption does not . . . eliminate state authority to craft minimum labor standards for particular regions or areas of the labor market."); *Rondout Elec., Inc. v. N.Y. State DOL*, 335 F.3d 162, 169 (2d Cir. 2003) (upholding prevailing wage applicable only to employees on public works projects); *Rest. Law Ctr. v. City of N.Y.*, 21-CV-4901 (DLC), 585 F.Supp.3d 366, 377

9

(S.D.N.Y. Feb. 10, 2022), aff'd on other grounds 90 F.4th 101 (2d Cir. 2024) (upholding City law preventing fast food employers from firing employees without notice or reason in the absence of egregious misconduct); *Rest. Law Ctr. v. City of N.Y.*, 17-CV-9128 (PGG), 360 F. Supp.3d 192, 239-40 (S.D.N.Y. Feb. 6, 2019) (upholding City law requiring Covered Employers to deduct voluntary contributions from paychecks and remit them to the not-for-profit designated by such [] employee").

Accordingly, because LL 61 imposes only minimum substantive requirements that apply to unionized and non-unionized employers alike, and does not touch on the collective bargaining process or any type of negotiation tactic that may be used during that process, plaintiffs cannot maintain a claim of NLRA preemption.

## POINT II

### THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING CLAIMS

This Court should decline to exercise supplemental jurisdiction over Counts Two and Three of the Complaint pursuant to 28 U.S.C. § 1367(c)(3) because the only federal claim fails as described above, and pursuant to 28 U.S.C. § 1367(1) because the claims raise novel and complex issues of State law. The decision to exercise supplemental jurisdiction is discretionary, but "not boundless." *Valencia v. Sung M. Lee*, 316 F.3d 299, 301-02 (2d Cir. 2003). The exercise of discretion is "informed by whether remanding the [supplemental] state claims comports with the underlying objective of most sensibly accommodating the values of economy, convenience, fairness, and comity." *Metro Found. Contrs., Inc. v. Arch Ins. Co.*, 498 Fed. App'x 98, 102-103 (2d Cir. 2012) (*quoting Itar-Tass Russian News Agency v. Russian Kurier*, 140 F.3d 442, 446 (2d Cir. 1998)). Here, all of the values support a decision declining to exercise supplemental jurisdiction so that the state law claims may be heard and decided by State Court.

Pursuant to 28 U.S.C. § 1367(c)(3), a court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it had original jurisdiction.[2] As a general rule, "if the federal claims are dismissed before trial, … the state claims should be dismissed as well." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966*); see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988); *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004); *Williams v. Dow Chem. Co.*, 01-CV-4307 (PKC), 326 F. Supp. 2d 443, 447 (S.D.N.Y. May 20, 2004) ("The fact that the district court has dismissed all claims over which it had original jurisdiction is a factor tending in the direction of declining jurisdiction.")  Indeed, the Second Circuit has found that courts abused their discretion by retaining supplemental jurisdiction over state law claims where federal claims have been dismissed "at a relatively early stage and the remaining claims involved issues of state law that were unsettled." *Valencia v. Sung M. Lee*, 316 F.3d 299, 306 (2d Cir. 2003) (where federal claims were dismissed after pretrial discovery was completed) (collecting cases).

Additionally, 28 U.S.C. § 1367(c)(1) provides a separate basis upon which the Court should decline to exercise supplemental jurisdiction over the state law claims, which raise novel and complex issues of state law.  This is because "'principles of federalism and comity' instruct [federal courts] to leave unresolved questions of state law to the states 'where those questions concern the state's interest in the administration of its government [.]'" *S. New Eng. Tel. Co. v. Comcast Phone of Conn.*, 718 F.3d 53, 61 (2d Cir. 2013) (*quoting Valencia*, 316 F.3d at 306); *see also Seabrook v. Jacobson*, 153 F.3d 70 (2d Cir. 1998) (finding District Court Judge abused his discretion by deciding a claim under New York State law via bench trial after the federal

---

[2] Plaintiffs have not invoked diversity of parties or any basis other than subject matter to support supplemental jurisdiction of Counts Two and Three of the Complaint.

11

claims were withdrawn following discovery). Both of the state law claims herein concern complex issues of state law that implicate the state's interest in the administration of its government.

In Count Two of the Complaint, Plaintiffs rely upon *Wholesale Laundry Bd. of Trade, Inc. v. City of New York*, 12 N.Y.2d 998 (1963) to argue that LL 61 is "clearly invalid" under New York State law. However, LL 61 is not identical to the law considered in *Wholesale Laundry*, and significant changes in controlling appellate caselaw with respect to preemption and home rule in the intervening decades require review of LL 61 in light of such caselaw. *Compare Wholesale Laundry*, 12 N.Y.2d 998 with *Glen Oaks Village Owners, Inc. v. City of N.Y.*, 44 N.Y. 3d 468 (2025) (holding that the State's climate act did not preempt the field of greenhouse gas emissions even though the State legislature stated that the act created a comprehensive regulatory scheme); *People v. Torres*, 37 N.Y.3d 256 (2021) (finding that a local law imposing misdemeanor liability for a driver who strikes a pedestrian or bicyclist was not preempted by New York Penal Law or the New York Vehicle and Traffic Law following detailed analysis of the preemption standards); *N.Y. State Club Ass'n v. City of New York*, 69 N.Y.2d 211, 221 (1987) (rejecting the argument that a local law is necessarily conflict preempted if it prohibits what would be permissible under the State law). Important questions regarding the rights of municipalities as set forth in the New York Constitution vis-à-vis those of the State itself, as interpreted in modern home rule jurisprudence, should be resolved by the New York courts.

Similarly, Count Three of the Complaint raises important issues regarding the balance of powers between legislative and executive agencies, and plaintiffs do not even allege that there is settled law that would be binding upon this Court.[3] The inquiry under New York law

---

[3] As a preliminary matter, contrary to plaintiffs' assertions, the plain text of the local law in fact sets a clear wage and benefit standard for the executive agency to interpret and implement, and it is analogous to several other administrative code provisions that have passed muster. Thus, the

into whether a governmental agency has exceeded the scope of its delegated authority is intrinsically fact-based and flexible. *See, e.g., Independent Ins. Agents & Brokers of N.Y. v. N.Y.S. Dept. of Fin. Servs.*, 39 N.Y.3d 56, 69-70 (2022). *Boreali v. Axelrod*, 71 N.Y.2d 1, 12-14 (1987) sets forth factors to assist courts in making such determinations, but "[t]hese factors are flexible, do not constitute a checklist or a headcount, and are exemplary rather than exhaustive." *Independent Ins. Agents & Brokers of N.Y.*, 39 N.Y.3d at 70. In such event, these questions concerning the state's interest in the administration of its government should be left to New York State courts. It is clear that the principles of comity and fairness weigh against exercising supplemental jurisdiction over Counts Two and Three of the Complaint. *See, e.g., Valencia*, 316 F.3d at 305 ("needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.") (*quoting United Mine Workers*, 383 U.S. at 726.)

The principles of economy and convenience also weigh against retaining supplemental jurisdiction over the state law claims. The three claims raised in the Complaint all require separate and distinct legal analysis; a decision regarding one is not applicable to any of the others. Further, Second Circuit precedent appears to consider litigation to be "at a relatively early stage" if it is prior to trial. *See, e.g., Valencia*, 316 F.3d at 306; *Giordano v. City of N.Y.*, 274 F.3d 740, 754-55 (2d Cir. 2001) (affirming the district court's finding of summary judgment in favor of the City on federal claims and remanding with instructions to decline to exercise supplemental jurisdiction over the remaining state law claims); *Seabrook*, 153 F.3d at 71-73. This matter is in the earliest stages of litigation, meaning that dismissal of the state law claims at this point would

---

(cont'd) City contends that a particularized analysis into Count Three is not required. Nonetheless, if the Court disagrees, that analysis should be done in New York courts.

13

not lead to any significant duplication of effort or delay.  Accordingly, this Court should dismiss Count One of the Complaint for failure to state a claim as described above, and decline to exercise supplemental jurisdiction over Counts Two and Three pursuant to  28 U.S.C. § 1367(c)(1) and (3) because, in the absence of any federal claims, the remaining state law claims should be decided in state court.  Should this Court deny the motion to dismiss Count One of the Complaint, this Court should decline to exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(c)(1) because they raise complex and novel issues of state law and the principles of comity, fairness, economy, and convenience require the state claims to be decided in state court.

## CONCLUSION

For the foregoing reasons, defendant City respectfully requests that this Court dismiss the Complaint in its entirety, together with such other and further relief as this Court deems just and proper.

Dated:       New York, New York
             May 12, 2026


                                        **STEVEN BANKS**
                                        Corporation Counsel of the City of New York
                                        *Attorney for Defendant*
                                        100 Church Street
                                        New York, New York 10007
                                        (212) 356-2369


                              By:    /s/
                                     Aimee K. Lulich
                                     *Senior Counsel*


14

26-CV-1418 (JPC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REAL ESTATE BOARD OF NEW YORK,
ROYAL REALTY CORP. D/B/A THE
DURST ORGANIZATION, and EXTELL
DEVELOPMENT,

Plaintiffs,

- against -

THE CITY OF NEW YORK,

Defendant.

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF THE MOTION FOR JUDGMENT ON THE PLEADINGS**

**STEVEN BANKS**
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street*
*New York, N.Y.  10007*

*Of Counsel: Aimee K. Lulich*
*Tel:  (212) 356-2369*
*Matter No.: 2026-016649*

*Due and timely service is hereby admitted.*

*New York, N.Y.  ..................................................................... , 2025......*

*........................................................................................... , Esq.*

*Attorney for ................................................................................................*

15